UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JOHN DOE,

                                    Plaintiff,

        -against-

ALEYA A. KUSUM, ALI SHARIFF, WELLS            07 Civ. 8470 (AKH)(MHD)
FARGO BANK, NA, and NEW YORK CITY,

                                    Defendants.

-------------------------------------------------------------------x

**CITY DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for the City
100 Church Street (Admin. Law Div.)
New York, NY  10007
(212) 788-0768

GABRIEL TAUSSIG,
ROBIN BINDER,
LOUISE MOED,
TERESITA V. MAGSINO,

        Of Counsel.

October 9, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT LAW ................................................................................................................. 2

    The Padlock Law ............................................................................................................ 2

    The Nuisance Abatement Law ....................................................................................... 3

ARGUMENT

             PLAINTIFF HAS NOT MET HIS BURDEN OF
             SHOWING HIS ENTITLEMENT TO A
             PRELIMINARY INJUNCTION MANDATING
             PARTICULAR LAW ENFORCEMENT ACTION
             BY THE CITY................................................................................................ 4

        A.   The Standard for Being Granted a Mandatory
             Preliminary Injunction. ............................................................................. 4

        B.   Plaintiff Has Not Shown Any Likelihood of
             Success on the Merits.. ............................................................................... 5

             1.  The Instant Application Is Devoid of Any
             Evidence in Support of the Underlying
             Claims.. ................................................................................................... 5

             2.  Plaintiff has failed to set out a prima facie
             selective enforcement claim.... ............................................................... 9

             3.  Plaintiff has not shown that he has standing
              to complain about the City's law enforcement
             decisions regarding the subject premises.......................................... 12

        C.   Plaintiff Has Not Made a Showing of
             Irreparable Harm Such As Would Support the
             Issuance of a Preliminary Injunction.. ..................................................... 13

CONCLUSION .................................................................................................................... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOHN DOE,

                                  Plaintiff,

          -against-

ALEYA A. KUSUM, ALI SHARIFF, WELLS
FARGO BANK, NA, and NEW YORK CITY,

                              Defendants.

                                                  07 Civ. 8470 (AKH)(MHD)

------------------------------------------------------------------------X

**CITY DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

In this action, plaintiff seeks damages and injunctive relief based on his allegation that his constitutional equal protection rights were violated by the City's racial discrimination in allegedly failing to take law enforcement action with respect to a multiple dwelling located at 546 West 148 Street, Manhattan (the "subject premises"). Defendant NEW YORK CITY (the "City"), by its attorney, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, submits this memorandum of law in opposition to plaintiff's motion for a preliminary injunction ordering the City to immediately commence an action under the Padlock Law or the Nuisance Abatement Law to vacate and close the subject premises and to provide immediate 24-hour-per-day police protection at the subject premises, both to supposedly end narcotics activity and violent crime at that location and to prevent retaliation against the plaintiff for bringing this suit.

Plaintiff has not met his burden of showing that he is entitled to a preliminary injunction. He has shown no likelihood of success on the merits. His application is deficient in several respects. He has provided no factual support for his various claims. He has failed to make our a prima facie case of selective enforcement that might support redress by this Court. He has not made out the basis for his standing to bring the claims he asserts herein.

Plaintiff's motion for a preliminary injunction should be denied in all respects.

## RELEVANT LAW

### The Padlock Law

Pursuant to the Padlock Law, codified as New York City Administrative Code §§ 10-155 and 10-156, the City can seek both injunctive relief in the form of closing orders against buildings at which certain enumerated violations of law have occurred and civil penalties against the owners of those buildings. Of relevance herein is the inclusion among the enumerated violations of the possession and/or sale of controlled substances and the maintenance of a criminal nuisance, as follows:

§ 10-155 Public nuisance defined.

For the purpose of this section and section 10-156 of this chapter, the following are declared to be public nuisances:

\* \* \*

b. Any building, erection or place where violations of any of the provisions of article two hundred twenty, two hundred twenty-one or two hundred twenty-five of the penal law are occurring and where two or more violations of such provisions which have resulted in one or more criminal convictions and one or more arrests have occurred within the twelve month period of time prior to the commencement of a proceeding pursuant to section 10-156 of this chapter. It shall be prima facie evidence that violations are occurring where an arrest for a violation of any of the provisions of such articles has been made within thirty days prior to the issuance of notice pursuant to section 10-156 of this chapter.

\* \* \*

e. Any building, erection or place where violations of any of the provisions of section 240.45 of the penal law are occurring and where two or more violations of such provisions which have resulted in one or more criminal convictions and one or more arrests have occurred within the twelve month period of time prior to the commencement of a proceeding pursuant to section 10-156 of this chapter. It shall be prima facie evidence that violations are occurring where an arrest for a violation of any of the provisions of such section has been made within thirty days prior to the issuance of notice pursuant to section 10-156 of this chapter.

## The Nuisance Abatement Law

Pursuant to the Nuisance Abatement Law, codified as New York City Administrative Code § 7-701 et seq., the City can seek both injunctive relief in the form of closing orders against buildings at which certain enumerated violations of law have occurred and civil penalties against the owners of those buildings. Of relevance herein is the inclusion among the enumerated violations of certain Building Code violations and the possession and/or sale of controlled substances, as follows:

§ 7-703 Public nuisance defined.

The following are declared to be public nuisances:

\* \* \*

(d) Any building, erection or place, other than a one- or two-family dwelling classified in occupancy group J-3 pursuant to section 27-237 of this code, which is in violation of article five of subchapter [three] of chapter one of title twenty-six or of article three, four, six, ten, twenty-two or twenty-four of subchapter one of chapter one of title twenty-seven of this code. A conviction, as defined in subdivision thirteen of section 1.20 of the criminal procedure law, of persons for offenses, as defined in subdivision one of section 10.00 of the penal law, in violation of the aforesaid provisions of this code in the building, erection or place, including one- or two-family dwellings, within the period of one-year preceding the commencement of an action under this chapter, shall be

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction          - 3 -

presumptive evidence that the building, erection or place, including one- or two-family dwellings, is a public nuisance;

* * *

(g) Any building, erection or place, including one- or two-family dwellings, wherein, within the period of one year prior to the commencement of an action under this chapter, there have occurred three or more violations of any of the provisions of article two hundred twenty, two hundred twenty-one or two hundred twenty-five of the penal law.

## ARGUMENT

### POINT I

### PLAINTIFF HAS NOT MET HIS BURDEN OF SHOWING HIS ENTITLEMENT TO A PRELIMINARY INJUNCTION MANDATING PARTICULAR LAW ENFORCEMENT ACTION BY THE CITY.

Plaintiff has not met the standards required for being granted a preliminary injunction mandating that the City post a police officer in front of the subject premises and commence certain legal proceedings against the subject premises.

### A.    The Standard for Being Granted a Mandatory Preliminary Injunction

In order to obtain a preliminary injunction, a party must establish irreparable harm and either a likelihood of success on the merits or a sufficiently serious question going to the merits to make them a fair ground for litigation, with a balance of hardships tipping in favor of the party seeking the preliminary injunction. Otokoyama Co. v. Wine of Japan Import, Inc., 175 F3d 266, 270 (2d Cir. 1999), and Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F2d 70, 72 (2d Cir. 1979). Furthermore, the Court of Appeals for the Second Circuit differentiates between the basis for granting a preliminary injunction that is prohibitory and one that is mandatory. Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F3d 27, 33 (2d Cir. 1995). A plaintiff

seeking to have the court mandate a particular action by defendant must meet the higher burden of showing a "clear or substantial likelihood of success on the underlying merits of its claim."

Plaintiff seeks to have this Court order the City to post police officers in front of the subject premises twenty-four hours per day and to commence litigation seeking to vacate and close the building at the subject premises pursuant to the Padlock Law or the Nuisance Abatement Law. Plaintiff is clearly seeking a mandatory injunction pursuant to which this Court would mandate that the Police Department take certain law enforcement steps, including bringing certain specified actions in New York State Court seeking a closure order for the subject premises. Thus, plaintiff must make a showing of clear or substantial likelihood of success on the merits of his claim.

**B.      Plaintiff Has Not Shown Any Likelihood of Success on the Merits.**

**1. The Instant Application Is Devoid of Any Evidence in Support of the Underlying Claims.**

Plaintiff's application to this Court is completely inadequate to support the grant of injunctive relief. There is no declaration or affidavit by anyone with competent personal knowledge of the circumstances alleged herein. Nor is there a single document annexed as an exhibit in support of a single fact alleged in the "Verified Complaint," which is signed by plaintiff's attorney and purportedly verified by plaintiff's employee. Plaintiff himself has sworn to nothing herein. Plaintiff fails to produce any admissible evidence to support his assertions in the complaint that the subject building is crime-ridden, and that sufficient drug arrests and convictions have occurred such as would support an application by the NYPD to New York State Supreme Court for a closing order pursuant to the Padlock or Nuisance Abatement Law. Moreover, plaintiff includes no basis whatsoever for his assertion that the City fails to commence civil enforcement actions against buildings in Washington Heights at which drugs are being sold

but does take such enforcement action against the similar buildings he posits exist on East 73rd Street between Fifth and Madison Avenues or other upper East side locations.

The "Verified Complaint" alleges the following "facts":

- Narcotics sales occur day and night at the subject premises (Ver. Comp. ¶ 10).

- An unnamed individual who supposedly raped an unnamed Columbia University undergraduate at an unspecified time was "harbored" at the subject premises and removed by a SWAT team on August 29, 2007 (Ver. Comp. ¶ 11).

- Someone who supposedly was involved with drug activity at the subject premises was beaten to death either in broad daylight on September 21, 2007 (Ver. Comp. ¶ 1) or inside the premises on September 22, 2007 (Ver. Comp. ¶ 11).

- Violence occurs on the street in front of the subject premises (Ver. Comp. ¶ 12).

- The subject premises are a fire hazard because of being heated by illegal kerosene burners (Ver. Comp. ¶ 14).

- There are literally dozens of open Department of Buildings violations against the subject premises (Ver. Comp. ¶ 14).

- There are sewage problems at the building (Ver. Comp. ¶ 14).

- Conditions at the subject premises reduce the value of plaintiff's unidentified building by at least $500,000 and impair plaintiff's ability to find tenants at market-rate rents (Ver. Comp. ¶ 19).

These bare allegations are conclusory and no evidentiary support is provided for any of these statements. The allegations of narcotic sales inside the building, if true and documented by admissible evidence, might provide sufficient factual support to meet the requirements for bringing a case under the Nuisance Abatement Law but would not be sufficient under the Padlock Law.[1] However, the other allegations made by plaintiff do not provide an adequate predicate. Neither a murder in the building or outside the building, the arrest of a criminal from inside the building for a crime unrelated to drug sales at the subject premises, nor plaintiff's allegations of economic harm to his neighboring building bring this building within the purview of either the Nuisance Abatement or Padlock Law. Nor would a closure order under either of those laws be supported by the code violations alleged by plaintiff to exist at the subject premises.

Moreover, plaintiff's bare allegations regarding neglect by the City of the subject premises are, in fact, untrue. As set forth in the accompanying Declaration of Allen Schwartz from the New York City Police Department Civil Enforcement Unit, numerous nuisance abatement cases are brought in the precinct in which the subject premises are located. More cases are brought each year against properties in Washington Heights, specifically in the precinct that encompasses the subject premises, than against properties located on the upper east side. Schwartz Dec. ¶¶ 6-7.

---

[1] To bring an action for injunctive relief under the Padlock Law, the City must have proof of arrests and convictions for the sale and/or possession of controlled substances. The Nuisance Abatement Law requires proof only of "violations" of the laws regarding controlled substances but does not necessarily require proof of arrests or convictions.

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction          - 7 -

The subject premises were recently referred to HPD's Narcotics Control Unit. See the Declaration of Timothy Vance, director of that unit. Contrary to plaintiff's allegations that the City has a deliberate policy to neglect the environs of the subject premises, numerous locations in the vicinity of the subject premises have been the target of law enforcement. Vance Dec. ¶¶ 4-5. The methods and procedures to be followed by that unit in addressing the subject premises cannot be disclosed herein without compromising the effectiveness of those procedures, but the ultimate goal is to aid the Police Department in obtaining sufficient evidence to support eviction cases against specific apartments out of which drug dealers operate.

The public records of the Department of Buildings that are available via the Internet[2] show the following: violations for failing for file annual boiler inspection reports, several complaints about electrical wiring being defective, two complaints that an apartment at the premises is being used as an SRO, and complaints that the sprinkler system is defective. One Notice of Violation and Hearing returnable before the New York City Environmental Control Board for defects in the boiler was issued and a default judgment entered in the absence of an appearance by an owner to answer the notice. Plaintiff's characterization of the magnitude of the number of Department of Buildings violations is belied by the actual records kept by DOB for this building.[3]

---

[2] http://a810-bisweb.nyc.gov/bisweb/bsqpm01.jsp

[3] The Nuisance Abatement Law provides for actions based on certain violations of the Building Code, such as occupancy of a building contrary to its certificate of occupancy, work without a permit, and violation of stop work order. The violations actually outstanding against this building do not qualify the building for such a suit.

The public records of the Department of Housing Preservation and Development that are available via the Internet[4] show that the building is lawfully comprised of nine SRO units and one class A apartment. The records show numerous common Housing Maintenance Code violations, such as heat and hot water violations, paint and plaster defects, roaches, and the absence of required carbon monoxide monitors. Emergency services have been provided by contractors retained by HPD. The Emergency Services Bureau has provided gas and electric service, boiler repair, and lead abatement at the premises, for which almost $23,000 is owed by the building owners.

Internet-accessible public records show that three "heat and hot water" cases and one comprehensive case seeking building-wide injunctive relief were brought by HPD in Housing Court against the owners of the building between 2005 and 2007, and that there are outstanding judgments for civil penalties in each case. Neither the Padlock Law nor the Nuisance Abatement Law can address the outstanding code enforcement issues, since the only injunctive remedy they provide is a closure of the target building, not a cure of any of the conditions that contributed to the need for injunctive relief.

In summary, not only has plaintiff failed to provide factual support for his claims herein, his claims are factually inaccurate.

### 2. Plaintiffs have failed to set out a prima facie selective enforcement claim.

Plaintiff alleges a City "policy and pattern and practice" of neglect of nuisance conditions in "neighborhoods … dominated by people of color" (Ver. Comp.¶ 24) without any

---

[4] http://167.153.4.71/hpdonline/provide_address.aspx

evidentiary support for that conclusion whatsoever.[5]   Plaintiff states that the City would not

allow a "crack house" to operate for "fifteen minutes" on East 73rd Street between Fifth and

Madison Avenues, but fails to produce even the barest evidence that such an operation ever did

exist in that neighborhood and that it was terminated by law enforcement action.   As such, the

claim of deliberate neglect of nuisances in certain neighborhoods and focus on nuisances in other

neighborhoods is completely speculative and unsupported by any facts.

The doctrine of equal protection forbids a governmental entity "from applying or

enforcing an admittedly valid law 'with an evil eye and an unequal hand ...'"   Yick Wo v.

Hopkins, supra at 373-74.   To prevail on a claim of selective enforcement, plaintiffs in this

Circuit traditionally have been required to show both (1) that "they were treated differently from

other similarly situated individuals" (the "unequal hand" requirement), and (2) that "such

differential treatment was based on "impermissible considerations such as race, religion, intent to

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a

person" (the "evil eye" requirement).   LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980).

In Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the Supreme

Court affirmed the validity of "class of one" selective enforcement claims where the plaintiff is

not a member of a suspect class or deprived of a fundamental right, but simply alleges that he

"has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment."   There has since been a question as to whether

---

[5] For that matter, it is also commonly believed that the opposite policy is true, namely, that law enforcement personnel and the court system treat drug offenses committed by people of color much more harshly than the same offenses when committed by Caucasians.

Olech modified the second part of the LeClair analysis by removing the requirement that malice or bad faith be shown in order to state a valid "class of one" equal protection claim.

Initially, the Court of Appeals for the Second Circuit stated, in dicta, that Olech had removed the malice requirement.  See, Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2001); Gelb v. Board of Elections of New York, 224 F.3d 149, 157 (2d Cir. 2000).  But the Second Circuit retreated from this position in Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494 (2d Cir. 2001), after "the district court [in Harlen] and a number of our sister circuits ... read Olech differently, holding that it did not remove the requirement that a plaintiff alleging an equal protection violation based on selective enforcement show that the governmental action at issue was motivated by personal animus."  273 F.3d at 500, citing, e.g., Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000), cert. denied, 531 U.S. 1080 (2001); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000).

Because it did not need to resolve this question in Harlen, the Second Circuit did not "decide which reading [of Olech] is the correct one."  273 F.3d at 500.  Rather, it assumed that a "class of one" plaintiff could survive a summary judgment motion by making one of two showings -- "that there was no rational basis for the unequal treatment received, or that the denial of the application was motivated by animus" -- and found that the plaintiff there could not make either showing.  Id.  The Court of Appeals subsequently took the same approach in Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001) ("As in Harlen, we decline to resolve this issue because its resolution would not affect the outcome of this appeal" and "assum[e] without deciding that Olech changed this Circuit's requirement that a 'class of one' plaintiff alleging an equal protection violation show an illicit motivation ....")  Thus, we too must assume, for purposes of this summary judgment motion, that a "class-of-one" plaintiff can establish the "evil

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction        - 11 -

eye" requirement by showing either that the alleged differential treatment was malicious or that it was arbitrary or irrational.

Plaintiffs fail to establish in support of their preliminary injunction motion that the subject premises was treated differently from any similarly situated building located in a non-minority neighborhood. Plaintiff simply makes conclusory assertions that buildings in minority neighborhoods are neglected by law enforcement. Nor does plaintiff provide any evidence in support of this motion that the City's enforcement decisions with respect to the subject building were intentionally based on race or some other improper consideration, or were arbitrary and irrational in any way. Plaintiffs' complaints regarding the alleged lack of enforcement at the subject building are insufficient to set forth an equal protection claim.

### 3. Plaintiff has not shown that he has standing to complain about the City's law enforcement decisions regarding the subject premises.

To establish standing in federal court within the meaning of Article III, an individual plaintiff must show meet the standards set forth by the Supreme Court in <u>Lujan v. Defenders of Wildlife</u>, 504 US 555, 560-561 (1992) as follows:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized,[1] and (b) "actual or imminent, not 'conjectural' or 'hypothetical'". Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
>
> [1]By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i. e.*, with the manner and degree of evidence required at the successive stages of the litigation.

[citations omitted throughout]

Plaintiff has failed to allege facts that support standing on his part. His status as a neighboring property owner does not confer upon him the standing to complain about law enforcement decisions made with respect to a neighboring building. Indeed, plaintiff does not show a particularized injury from either the criminal actions of unidentified individuals at the premises or the City's supposed inaction at the subject building. His provides no support for his speculative claim that the value of his property has been reduced. Given the current real estate boom in Harlem, plaintiff's assertion of economic loss is far from certain.

The injury he claims by dint of being in an area in which crimes occur is no different from that which could be claimed by other residents of his neighborhood or other areas of New York City, and he has alleged no facts that particularize his situation such as to form a basis for standing to demand that the city take enforcement action against the subject building.

## C.    Plaintiff Has Not Made a Showing of Irreparable Harm Such As Would Support the Issuance of a Preliminary Injunction.

A showing of irreparable injury is "an absolute requirement" for being granted a preliminary injunction. <u>Holt v. Continental Group, Inc.</u>, 708 F2d 87, 90 (2d Cir. 1983), <u>cert. denied</u>, 465 US 1030 (1984); <u>Berman v. New York City Ballet, Inc.</u>, 616 FSupp 555, 557 (SDNY 1985). Plaintiff cannot meet the requirement that he show the imminence of irreparable harm, which is the "most important prerequisite for the issuance of a preliminary injunction." <u>Nat'l Ass'n for the Advancement of Colored People, Inc. v. Town of East Haven</u>, 70 F3d 219,

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction          - 13 -

224 (2d Cir. 1995); <u>Reuters Ltd. v. United Press Int'l, Inc.</u>, 903 F2d 904, 907 (2d Cir. 1990); <u>Bell and Howell:  Mamiya Co. v. Masel Supply Co.</u>, 719 F2d 42, 45 (2d Cir. 1983).  To establish irreparable harm, plaintiff must demonstrate an injury that is "likely and imminent, not remote or speculative." <u>NAACP</u>, 70 F3d at 224, citing <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F2d 969, 975 (2d Cir. 1989).

As was stated hereinabove in the discussion of standing, plaintiff has shown no particularized injury.  The future harms upon which plaintiff bases his motion herein are completely speculative.  The occurrence of a crime in the subject premises by someone related to drug trafficking at that building against a yet-unknown victim is highly indefinite and speculative, and not imminent.  Plaintiff's claim that his building will lose $500,000 in value at a time that real estate in Harlem is becoming more and more valuable and his concern that he will lose "suitable tenants" are not only speculative but compensable by money damages, if plaintiff can make a sufficient factual showing of actual economic loss after having prevailed on his underlying claim for an entitlement to court-directed law enforcement services on his block.  His concern that he might incur liability if a tenant were injured or robbed is similarly speculative.  As a landlord, he has a duty to take measures to secure his building to prevent unlawful entry, but the possibility of him bearing liability for injury to a tenant elsewhere on the block is highly speculative.

Plaintiff has failed to show the imminence of irreparable harm in the absence of the extraordinary relief he seeks herein:  for this Fed Court to direct a City agency to commence an action in New York State Supreme Court seeking a closure order from that court and to redeploy members of the New York City Police Department to guard a particular building, 24 hours per day, on plaintiff's block.

Plaintiff's application to this Court for court-ordered law enforcement at the subject premises is barred by the general rule that, absent a special relationship between the municipality and the party claiming injury, a municipality's duty is ordinarily one owed to the public at large and not to any particular individual, Moch Co. v. Rensselaer Ware Co., 247 NY 160 (1928). A municipality's provision of police protection to its citizenry is also considered a resource-allocating function better left to the discretion of the policy makers. Weiner v. Metropolitan Transp. Auth, 55 NY2d 175 (1982). As explained by the Court of Appeals, a different rule "could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits." Riss v. City of New York, 22 NY2d 570, 582 (1968). Federal court cannot be an avenue for obtaining the equivalent of a publicly-funded private security guard for a particular premises.

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction          - 15 -

## CONCLUSION

**IN LIGHT OF THE FOREGOING, PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED IN ALL RESPECTS.**

Dated:        New York, NY
              October 9, 2007

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for the City Defendant

By:    _____
              LOUISE MOED (LM-7442)
              100 Church Street
              New York, NY  10007
              (212) 788-0768

GABRIEL TAUSSIG,
ROBIN BINDER,
LOUISE MOED,
TERESITA MAGSINO,

        Of Counsel.

City Defendant's Memorandum of Law
in Opposition to a Preliminary Injunction        - 16 -