UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JOHN DOE,

                                        Plaintiff,

              -against-

                                                            07 Civ. 8479 (AKH)(MHD)
ALEYA A. KUSUM, ALI SHARIFF, WELLS
FARGO BANK, NA, and NEW YORK CITY,

                                        Defendants.

------------------------------------------------------------------------x


# CITY DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW


                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              Attorney for the City
                              100 Church Street (Admin. Law Div.)
                              New York, NY  10007
                              (212) 788-0768


GABRIEL TAUSSIG,
ROBIN BINDER,
LOUISE MOED,

Of Counsel.

October 23, 2007

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    POINT I ....................................................................................................................... 2

        As a Matter of Federal Law, Plaintiff Is Not Entitled
to Obtain Court-Ordered Law Enforcement
Personally Tailored to His Concerns and Economic
Interests ................................................................................................................ 2

    POINT II ...................................................................................................................... 5

        As a Matter of State Law, Plaintiff Is Not Entitled
to Obtain Court-Ordered Law Enforcement
Personally Tailored to His Concerns and Economic
Interests ................................................................................................................ 5

CONCLUSION ...................................................................................................................... 8

**UNITED STATES DISTRICT COURT**

SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

JOHN DOE,

                              Plaintiff,

              -against-

                                                    07 Civ. 8479 (AKH)(MHD)
ALEYA A. KUSUM, ALI SHARIFF, WELLS
FARGO BANK, NA, and NEW YORK CITY,

                              Defendants.

-------------------------------------------------------------------------x

**CITY    DEFENDANT'S    SUPPLEMENTAL
MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

In this action, plaintiff seeks injunctive relief based on his claim that his constitutional equal protection rights are being violated by the City's alleged failure to take law enforcement action with respect to a multiple dwelling located at 546 West 148 Street, Manhattan (the "subject premises"). He also seeks damages in the amount of $500,000 for the economic injury he opines has flowed from the lack of sufficient law enforcement at the subject premises.

Plaintiff moved for a preliminary injunction ordering the City to immediately commence an action under the Padlock Law or the Nuisance Abatement Law to vacate and close the subject premises and to provide immediate 24-hour-per-day police protection at the subject premises, both to supposedly end narcotics activity and violent crime at that location and to prevent retaliation against the plaintiff for bringing this suit. By oral decision on October 16, 2007 and summary order dated October 17, 2007, this Court denied that motion.

The Court requested that the parties brief the issue of whether a court has the power to selectively order the provision of police protection. Defendant NEW YORK CITY (the "City"), by its attorney, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, submits this supplemental memorandum of law in response to that request.

Under neither federal law nor state law is any individual entitled to police protection unless certain prerequisites are met, which conditions are not present herein.

**ARGUMENT**

**POINT I**

**AS A MATTER OF FEDERAL LAW, PLAINTIFF IS NOT ENTITLED TO OBTAIN COURT-ORDERED LAW ENFORCEMENT PERSONALLY TAILORED TO HIS CONCERNS AND ECONOMIC INTERESTS.**

In DeShaney v. Winnebago County Dep't of Soc. Serv., 489 US 189, 195-197 (1989), the Supreme Court rejected a damage claim pursuant to § 1983 by the mother of a young child who sought to hold a local social service agency responsible for failing to protect her child from his father's abuse. The claim was characterized as predicated on a substantive due process violation. The Court held as follows:

> …nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. … Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. … Consistent with these principles, our cases have recognized that the Due Process Clauses

City Defendant's Supplemental
Memorandum of Law                - 2 -

> generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. … If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them [footnote 3 omitted and discussed below]. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

See also Town of Castle Rock v. Gonzales, 545 US 748 (2005) (town bore no liability for failure of its police officers to enforce an order of protection issued in favor of an abused wife against her husband).

The DeShaney opinion sets forth the exceptional situations in which a governmental entity might have a duty to provide protection to a particular individual based on having established a special relationship with that individual, as follows:

> In Estelle v. Gamble, 429 U.S. 97 (1976), we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, Robinson v. California, 370 U.S. 660 (1962), requires the State to provide adequate medical care to incarcerated prisoners. 429 U.S., at 103-104 [footnote omitted]. We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him. Ibid., quoting Spicer v. Williamson, 191 N. C. 487, 490, 132 S. E. 291, 293 (1926). … In Youngberg v. Romeo, 457 U.S. 307 (1982), we extended this analysis beyond the Eighth Amendment setting [footnote omitted], holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others. Id., at 314-325 ….

489 US at 198-199. The Court went on to state as follows:

City Defendant's Supplemental
Memorandum of Law                    - 3 -

> It may well be that, by voluntarily undertaking to protect [the child in that case] against a danger it concededly played no part in creating, the State acquired a duty under state tort law to provide him with adequate protection against that danger. See Restatement (Second) of Torts § 323 (1965) (one who undertakes to render services to another may in some circumstances be held liable for doing so in a negligent fashion); see generally W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 56 (5th ed. 1984) (discussing "special relationships" which may give rise to affirmative duties to act under the common law of tort). But the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as we have said many times, does not transform every tort committed by a state actor into a constitutional violation. See Daniels v. Williams, 474 U.S., at 335-336; Parratt v. Taylor, 451 U.S., at 544; Martinez v. California, 444 U.S. 277, 285 (1980); Baker v. McCollan, 443 U.S. 137, 146 (1979); Paul v. Davis, 424 U.S. 693, 701 (1976).

489 US at 201-202.

The DeShaney Court noted in footnote 3 that "[t]he State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause. See Yick Wo v. Hopkins, 118 U.S. 356 (1886)." As noted in the City's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction at 9-12, plaintiff did not make a showing sufficient to support a selective enforcement claim under Yick Wo. Plaintiff failed completely to produce evidence in support of his allegations of racial discrimination in the provision of law enforcement resources to address drug-dealing in what plaintiff characterizes as "neighborhoods … dominated by people of color" as compared with "predominantly Caucasian populations" (Ver. Comp. ¶ 24). Plaintiff's allegations in this regard were speculative and conclusory. Moreover, the City submitted the declarations of two individuals with knowledge of the extensive law enforcement efforts that are indeed made in such neighborhoods, namely Allen Schwartz, Managing Attorney in the New York City Police

City Defendant's Supplemental
Memorandum of Law                - 4 -

Department Civil Enforcement Unit, and Timothy Vance, Director of the Narcotics Control Unit of the New York City Department of Housing Preservation and Development.

Plaintiff has made no showing herein that he is entitled, as a matter of constitutional law, to obtain targeted police protection that he believes will better protect his real estate investment. To the contrary, it is apparent that he is not entitled to such specially targeted law enforcement.

**POINT II**

**AS A MATTER OF STATE LAW, PLAINTIFF IS NOT ENTITLED TO OBTAIN COURT-ORDERED LAW ENFORCEMENT PERSONALLY TAILORED TO HIS CONCERNS AND ECONOMIC INTERESTS.**

Plaintiff's application to this Court for court-ordered law enforcement at the subject premises is barred under state law by the general rule that, absent a special relationship between the municipality and the party claiming injury, a municipality's duty is ordinarily one owed to the public at large and not to any particular individual, Moch Co. v. Rensselaer Ware Co., 247 NY 160 (1928). A municipality's provision of police protection to its citizenry is also considered a resource-allocating function better left to the discretion of the policy makers. Weiner v. Metropolitan Transp. Auth, 55 NY2d 175 (1982). As explained by the New York State Court of Appeals, a different rule "could and would inevitably determine how the limited police resources of the community should be allocated and without predictable limits." Riss v. City of New York, 22 NY2d 570, 582 (1968).

Plaintiff's claim for damages for the economic injury allegedly suffered by him due to the criminal activity at the subject premises is similarly unavailing. As a matter of state

tort law, municipalities are immune from liability for discretionary activities undertaken through their agents, including any failures in police protection.  Kovit v. Estate of Hallums, 4 NY3d 499 (2005), citing Peleaez v. Seide, 2 NY3d 186 (2004); Sorichetti v. City of New York, 65 NY2d 461 (1985).

The rule reflects the principle that, if liability flowed from every negligent action, public officials would be trained to shrink from their responsibilities in order to avoid exposing their municipal employers to additional costs. Thus, the protection afforded the discretion of municipal agents encourages municipalities to better serve their citizens.  Kovit, 4 NY3d  at 1190.

Based on this general rule, municipalities have been found not liable for injuries resulting from a failure to provide police protection, see, e.g., Weiner v. Metropolitan Transp. Auth, 55 NY2d 175 (1982), or even from the exercise of poor professional judgment, see, e.g., Kenavan v. City of New York, 70 NY2d 558, 569 (1989).  In fact, because of the heavy burden imposed on plaintiffs to establish a "special relationship," most claims of negligence against a municipality are dismissed as a matter of law. Kovit, 4 NY3d at fn 8.  See also Kircher v. City of Jamestown, 74 NY2d 251, 255 (1989) (cases are  "legion" in which the Court of Appeals has held that municipalities were immune from suit for exercising governmental powers including police protection in the absence of a special relationship). The instant case is no exception and plaintiff's motion for injunctive relief in the form of court-ordered law enforcement failed to make any showing of the special relationship that might support an award of the relief he seeks.

To establish the "special relationship" required for an exception to the general rule, the following elements must be present: (1) an assumption by the municipality, through

City Defendant's Supplemental
Memorandum of Law                - 6 -

promises or actions, of an affirmative duty to act on behalf of the injured party; (2) knowledge on

the part of municipality's agents that inaction could lead to harm; (3) some form of direct contact

between the municipality's agents and the injured party; and (4) the injured party's justifiable

reliance on the municipality's affirmative undertaking.  Cuffy v. City of New York, 69 NY2d

255, 260 (1987).    As Chief Justice Cardozo stated in Moch Co. 247 NY at 168, the "query

always is whether the putative wrongdoer has advanced to such a point as to have launched a

force or instrument of harm, or had stopped where inaction is at most a refusal to become an

instrument of good."  See also Figueroa v. NYC Transit Auth., 152 Misc2d 948, 955 (Sup. Ct

Kings Cty 1991)(in instances where police officers are liable, police affirmatively placed the

injured party in a dangerous situation or enhanced the danger).

        The instant complaint is devoid of facts supporting a "special relationship."  To

the contrary, plaintiff's claim is that the City has ignored plaintiff and has failed to enforce the

law at the subject premises, the opposite of having undertaken a "special relationship." In fact,

plaintiff seeks to have this Court create a special relationship between plaintiff and the Police

Department in favor of a specific building identified by plaintiff to the detriment, necessarily, of

some other target of law enforcement elsewhere.

        The law is clear that contact alone does not create an affirmative duty to protect.

Thus, the mere fact that plaintiff alleges having contacted "numerous City officials" (Ver. Comp.

¶ 23) and concedes that police officers and building inspectors have gone to the subject premises

(Ver. Comp. ¶ 23) does not establish that a "special duty" was created with respect to plaintiff,

his property, or the subject premises, which he does not own.  See Taebi v. Suffolk County

Police Department, 31 AD3d 531 (2d Dep't 2006)(direct contact on two occasions where only

assurance was that the police department would follow up by calling back did not establish a

"special relationship," as no affirmative duty to protect was assumed).

Finally, given no allegation of any offer by any member of the NYPD of

involvement at the subject premises, plaintiff had no reason to rely on continued involvement by

the officers.  Thus, reliance, the fourth element and the essential causative link between the

"special duty" assumed by the municipality and the alleged injury, Cuffy, 69 NY2d at 260, is not

present.

**CONCLUSION**

**IN LIGHT OF THE FOREGOING, THERE IS NO AUTHORITY FOR THIS COURT TO DIRECT THE CITY OF NEW YORK TO PROVIDE POLICE PROTECTION OR TO TAKE SPECIFIC LAW ENFORCEMENT ACTION WITH RESPECT TO THE SUBJECT PREMISES.**

Dated:        New York, NY
              October 23, 2007

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the City of New York
                                        Attorney for the City Defendant

                                        By:  _____

                                             LOUISE MOED (LM-7442)
                                             100 Church Street
                                             New York, NY  10007
                                             (212) 788-0768

GABRIEL TAUSSIG,
ROBIN BINDER,
LOUISE MOED,

        Of Counsel.

City Defendant's Supplemental
Memorandum of Law                    - 8 -